NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1731
_____

RICKY MUNEZ,

Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 1-09-cv-03860)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2011
_____

Before:  RENDELL, AMBRO, and NYGAARD, Circuit Judges

(Opinion filed:      November 30, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

Ricky Munez appeals the denial of his petition for a writ of *habeas corpus*.  In his

petition, he asserts an ineffective assistance of counsel claim, arguing that his counsel's

failure to notice the Government's violations of the Interstate Agreement on Detainers Act ("IADA") prejudiced his case. For the reasons that follow, we affirm.

## I. Background

Munez was serving a sentence in New Jersey state prison when a federal grand jury indicted him. He was charged with one count of conspiracy to distribute five or more grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841 and 846. The District Court appointed an attorney for him, and authorities brought him from the state prison to the federal courthouse and back six times.[1] Each round trip took no more than a day; Munez spent each night in the state prison. He ultimately pled guilty to the federal drug charge, for which the District Court sentenced him to 188 months in prison, to run concurrently with his state sentence.

Munez subsequently filed a *habeas corpus* petition claiming that his appointed trial counsel had been ineffective. He cited, among other grounds, his trial counsel's failure to notice the Government's violation of the IADA. The Government now concedes that it violated the IADA. Had these violations been raised, they would have required the District Court to dismiss the charge against Munez, possibly with prejudice.

After an evidentiary hearing on this issue, the District Court denied relief. In its thorough opinion, the Court reasoned that it did not need to reach the "deficiency" prong of ineffective assistance analysis because Munez's claim foundered on the "prejudice"

---

[1] The six trips were for Munez's initial appearance, his arraignment, a status conference, a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure, a motions hearing, and his sentencing.

prong. Specifically, it held that the outcome of Munez's case would have been the same even if his counsel had raised the IADA violations because (1) the Court would have dismissed the drug charge without prejudice and, (2) after reindictment, Munez would have pled guilty again. Nonetheless, the District Court granted a certificate of appealability pursuant to 28 U.S.C. § 2253(c). For the reasons given by the District Court, we affirm.

## II.    Discussion

The District Court had jurisdiction under 28 U.S.C § 1331. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). On appeal from a denial of a *habeas* petition, we exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008).

The IADA codifies an agreement that 48 states (including New Jersey), the District of Columbia, and the Federal Government have entered. *See* 18 U.S.C. App. 2 § 2. It provides uniform procedures for handling prisoners who are imprisoned in one state but face charges in another state. In particular, it contains an "antishuttling" provision under which the second state must complete the prisoner's trial before returning him to the first state. *See id.* at Art. IV(e). If it fails to do so, the court of the second state (in which the prisoner faces fresh charges) must dismiss the indictment. *Id.* There is no exception for technical or *de minimis* violations; the rule applies even if the second state interrupts the first state's imprisonment for just a few hours. *Alabama v. Bozeman*, 533 U.S. 146, 149 (2001).

3

The Federal Government is a "state" for IADA purposes. *See* 18 U.S.C. App. 2 § 2 Art. II(a); *United States v. Thompson*, 562 F.2d 232, 234 n.2 (3d Cir. 1977) (*en banc*). In general, courts must dismiss with prejudice cases in which prosecutors have violated the antishuttling rule. However, if the United States is the receiving "state," as it is here, then courts may dismiss the case with or without prejudice. 18 U.S.C. App. 2 § 9(1). The IADA lists three factors that courts may consider in deciding whether to dismiss a case without prejudice: (1) "the seriousness of the offense;" (2) "the facts and circumstances of the case which led to the dismissal;" and (3) "the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*

The crux of Munez's ineffective assistance claim is that a court probably would dismiss the drug charge with prejudice because of the Government's IADA violations. To show that his counsel was ineffective, Munez must prove two things: that his counsel's performance was deficient and that the deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both deficiency and prejudice are required, so a failure on either prong undermines the claim. The District Court considered only prejudice, as do we. To show prejudice, Munez must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In this case, that means that Munez must show a reasonable probability that had his counsel raised the IADA violations, then either (1) the District Court would have dismissed his case with prejudice or (2) it would have dismissed his case without prejudice and he would not have pled guilty after

4

reindictment.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[T]o satisfy the 'prejudice' requirement [in the guilty plea context], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").  Munez bases both arguments on the strength of his IADA claim.  We consider each in turn.

A.  *Dismissal with Prejudice*

Munez satisfies *Strickland*'s prejudice prong if there is a reasonable probability that the District Court would have dismissed his case with prejudice had it known of the Government's IADA violations.  Imagining itself in that scenario, the Court's "unequivocal answer" was that its "dismissal would have been without prejudice."  *Munez v. United States*, No. 09-cv-3860, 2011 WL 221655, at *6 (D.N.J. Jan. 20, 2011).  We agree that the District Court very likely would have dismissed Munez's case without prejudice.

The first of the three factors that the IADA asks us to consider is the seriousness of the offense.  The charge that Munez faced was serious.  When he was indicted, intent to distribute more than five grams of cocaine base carried a minimum sentence of five years, with a maximum of 40.  *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a)(2), 124 Stat. 2372, 2372 (increasing threshold from 5 to 28 grams).  Sentencing ranges are one indication of a crime's seriousness, and five years is among the harsher mandatory minimums for nonviolent crimes.  *See* 18 U.S.C. § 2381 (imposing a five-year mandatory minimum for treason); *United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005) (holding that a firearm crime was "serious" for IADA purposes in part because it

5

carried a maximum sentence of ten years).  Moreover, as the District Court noted, Munez's 12 felony convictions leave him with almost three times the number of criminal history points necessary to place him in the top Sentencing Guidelines category.

With the second IADA factor, we consider whether the circumstances would typically lead to dismissal.  The Government violated the IADA in this case because an administrative assistant filed Munez's detainer on the "Unsentenced Prisoner" form, whereas Munez was a sentenced prisoner.  He was not alone.  The Deputy United States Marshal for Camden, New Jersey later uncovered the same mistake in five other recent cases there.  Munez contends that there is a reasonable probability that a court would dismiss his case with prejudice to discourage similar oversights in the future.  Such negligence by the Marshals Service is a problem, and we do not condone it.  However, the Marshals Service swiftly took steps to remedy the problem.  It trained its staff, amended its initial appearance checklist to cover potential IADA problems, and changed its writ forms in consultation with the U.S. Attorney's Office.  Furthermore, the oversight in these cases was neither intentional nor systematic.  Therefore, in this case, we believe that the Government's errors here are not enough to overwhelm the other factors supporting a dismissal without prejudice.

The third and final IADA factor concerns what effect a reprosecution would have on the agreement on detainers and on the administration of justice.  In some cases, it is important that the state corrections system retain unbroken control over a prisoner, as when the prisoner is in a rehabilitation program.  This is not such a case.  Moreover, because the federal courthouse was only about 40 miles from the New Jersey prison,

6

there was no break in Munez's communication with his attorney.  Indeed, Munez met with his attorney at both locations several times.  The New Jersey and Federal Governments effectively administered justice alongside one another, without any of the delays or uncertainties that the IADA targets.

We decline the lengthy analogy that Munez offers between his case and *United States v. Pope*, 183 F. Supp. 2d 773 (D. Md. 2001).  *Pope* is to our knowledge the only case in which a district court has dismissed an indictment with prejudice for the United States' violations of the IADA since § 9 was added in 1988.  The defendant in *Pope* suffered from a mental illness that may have gone untreated (the facts were uncertain) because of the Government's IADA violations, a fact not present here.  *See id.* at 778.  Moreover, Pope's maximum sentence was 10 years, which the District Court distinguished from cases with maximum sentences of 19 and 20 years.  *Id.* at 777.  Munez's maximum sentence was 40 years.  Finally, the Marshals Service in Maryland at the time kept no written documentation of a prisoner's right to remain in federal custody.  *Id.*  In our case, by contrast, the Marshals Service in New Jersey had procedures in place, but an administrative assistant got them wrong.  While we do not disagree with the reasoning of *Pope*, these distinctions are sufficient to lead to the opposite result in our case.

For these reasons, Munez has not shown that there is a reasonable probability that the District Court would have dismissed his indictment with prejudice had it known of the IADA violations.  We thus turn to the other ground with which Munez seeks to satisfy the *Strickland* prejudice prong.

7

B.  *Going to Trial after Reindictment*

Munez claims that even if the District Court had dismissed his case without prejudice, the outcome would have been different because he would not have pled guilty when the Government reindicted him.  The only card that Munez would hold in that scenario that he did not hold at his actual guilty plea is the IADA violation.  He cites this as the reason that he would plead not guilty, "given the potential for success on appeal" of his IADA claim.  Munez Br. at 23.

However, as discussed above, the IADA claim had limited potential for success on appeal.  Moreover, had Munez pled not guilty, he would have faced the threat of a much longer sentence, in part because of less overlap with his New Jersey sentence.  His chances of winning at trial were slight, as the Government had a strong case, including three audio-recorded drug buys without any apparent procedural blemish.  Perhaps for these reasons, Munez was shaky on this question at his evidentiary hearing.  The District Court "carefully observed [Munez] . . . .  His self-interest in the matter, his evasive or even illogical demeanor while testifying, and his self-contradictions undermine his insistence that he would have gone to trial in this case after reindictment."  *Munez*, 2011 WL 221655, at *7.  The record does not contradict the District Court's observations, and we defer to the Court's assessment of credibility based on demeanor.  *See United States v. Brown*, 631 F.3d 638, 643 (3d Cir. 2011).

*   *   *   *   *

Because Munez has not shown a reasonable probability that the outcome of his case would have differed had his counsel raised the Government's IADA violations,

8

either because the District Court would have dismissed it with prejudice or because he would have pled not guilty, we need not reach the deficiency prong of ineffective assistance analysis. We therefore affirm.